UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TAMMY JOYCE WILLIAMS                                                                        PLAINTIFF

VERSUS                                                                CIVIL ACTION NO. 1:22-CV-121-RPM

COMMISSIONER OF SOCIAL SECURITY                                                  DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff Tammy Joyce Williams' appeal from the Commissioner of Social Security's (Commissioner) denial of her application for disability benefits under the Social Security Act (the Act). Williams had a previous application for benefits denied on February 11, 2019. Doc. [6] at 96-100. In that earlier proceeding, Williams alleged a disability period beginning September 1, 2016. *Id.* at 96. As determined by the prior Administrative Law Judge (ALJ), Williams was 44-years old at the alleged disability onset date, which defined her as a younger individual. *Id.* at 103. The ALJ found Williams to have a severe impairment of degenerative disc disease that limited her to sedentary work. *Id.* at 98-100. Nevertheless, the ALJ found she could perform past relevant work as a payroll clerk. *Id.* at 103-04. In the alternative, the ALJ found there were other jobs Williams can do that exist in significant numbers in the national economy. *Ibid*.

In the instant application for benefits now on appeal before this Court, Williams alleged an amended onset date of disability beginning February 12, 2019, the day after the prior ALJ's decision denying benefits. Doc. [6] at 16, 74. Williams alleged disability based on back injury, depression, pain management, anxiety, difficulty sleeping, and high blood pressure. *Id.* at 218. Williams was almost 50-years old at the alleged onset date, with a high school education, and past relevant work as a school bus driver and teacher assistant. *Id.* at 120, 131, 219. Williams

worked in her last full-time job as a school bus driver and teacher's assistant for 15 years until she suffered an on-the-job injury in January of 2015. *Id.* at 79-80, 101. According to the medical records, Williams slipped on ice while walking down a wheelchair ramp, causing her to fall and fracture her spine. *Id.* at 243, 490-91, 507. She underwent three surgical operations to treat the injury. *Id.* at 82.

In her later-filed application for disability benefits, Williams' age category had changed from younger person to a person closely approaching advanced age. Williams' application was denied initially and on reconsideration. *Id.* at 109-35. She requested and was granted a hearing before an Administrative Law Judge (ALJ). *Id.* at 69-92. Following a hearing, the ALJ issued an unfavorable decision on August 2, 2021. *Id.* at 16-28. In his decision, the ALJ found that Williams had not engaged in substantial gainful activity since the alleged onset date of her disability. *Id.* at 18. Consistent with the previous ALJ's decision, he found Williams had a severe impairment of lumbar degenerative disc disease, but he added obesity as a severe impairment. *Id.* at 18-20. The ALJ concluded that Williams did not have an impairment or combination of impairments that met the criteria for the listed impairments. *Id.* at 20. Based on her impairments, the ALJ found that Williams retained the residual functional capacity (RFC) to perform the full range of light work as defined by Social Security regulations. *Id.* at 20-28. This contrasts with the prior ALJ's decision, which found Williams was limited to a full range of sedentary work for the period of January 15, 2015, to February 11, 2019. *Id.* at 100. Relying in part on the testimony of a vocational expert, the ALJ concluded that Williams can perform her past relevant work as a teacher's assistant. *Id.* at 28. Accordingly, he found her not disabled under the Act. *Ibid.*

The Appeals Council denied Williams' request for a rehearing. Williams then filed the instant complaint. *Id.* at 5-9. In her memorandum brief in support of remand, Williams argues (1) the ALJ did not properly evaluate the medical opinion evidence when assigning an RFC; and (2) the ALJ's credibility assessment is contrary to law. Doc. [10].

<u>**Law and Analysis**</u>

<u>**Standard of Review**</u>

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision is supported by substantial evidence, then the findings are conclusive; and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues de novo, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are

within a permissible meaning of the statutory or regulatory language.  *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5).  The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520(a), § 404.920(a).  Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work.  *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step.  *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987).  Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy.  The burden then shifts back to the claimant to establish that he cannot perform this alternative employment.  *Id.*

**Medical Opinion Evidence**

Williams argues that the ALJ's RFC finding lacks substantial evidence.  She asserts that all the medical opinion evidence supports a finding of less than a full range light work, thus contradicting the ALJ's finding.  She further argues that despite the overall consistency of the medical opinion evidence, the ALJ found every medical provider's opinion to be unpersuasive

and substituted his own medical judgment when finding Williams could perform a full range of light work.

The medical opinion evidence supports Williams' argument that she is not capable of performing a full range of light work. The Social Security regulations define light work as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967. Wendy Clayton, an occupational therapist with Southern Bone & Joint Rehabilitation, reported that Williams only demonstrated the ability to perform within the sedentary physical demand category. Doc. [6] at 1018. Williams' treating physician, David Lee, M.D., also assigned limitations that would allow for less than a full range of light work. *Id.* at 1086-89. For example, he reported she could rarely lift 10 pounds and occasionally lift less than 10 pounds. *See Jessie v. Astrue*, 2008 WL 11385585, at *13 (D.Ore. Sept. 19, 2008). She needed 4 to 5 unscheduled breaks during the day, would be off task for 25% or more of the workday, and would miss more than four workdays per month. *See Carter v. Comm'r of Soc. Sec.*, 2015 WL 400622, at *7 (S.D. Ohio Jan. 28, 2015); *Savoie v. Astrue*, 2009 WL 2849596, at *7 (W.D.La. Sept. 1, 2009). Stanley Hopkins, M.D., and Rohini Mendonca, M.D., state agency medical consultants, opined that Williams was limited to standing/walking 4 hours per day. *Id.* at 112-17, 127-31. In other words, Drs. Hopkins and Mendonca found she was not able to perform without qualification the full range of light work. *See Nino v. Berryhill*, 2018 WL 889454, at *3 (N.D.Tex. Jan. 19, 2018) (noting that SSR 83-12 states that limitation to

5

standing/walking 4 hours out of 8 "significantly erodes the occupational base of light work"). In fact, Dr. Hopkins' report indicates she is limited to sedentary work. Doc. [6] at 112, 118, 125.

All the medical opinion evidence supports a finding that Williams is not capable of a full range of light work. Nevertheless, the ALJ rejected all the medical opinions, finding them unpersuasive, and then constructed an RFC without the benefit of any medical opinion evidence. An ALJ can determine a claimant's RFC without a medical opinion addressing her specific functional limitations, provided that the remainder of the evidence substantially supports the ALJ's determination. *Ripley v Chater*, 67 F.3d 552, 557 (5th Cir. 1995). However, "when the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error." *Garcia v. Berryhill*, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018) (collecting cases). Unless the remaining record "clearly establish[es]" the effect the claimant's condition has on her ability to work, the ALJ must fill this evidentiary gap with another medical opinion. *See Ripley*, 67 F.3d at 557. While the ALJ has the ultimate responsibility to determine an applicant's RFC, "an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F.App'x 828, 832 n.6 (5th Cir. 2009). When this occurs, the "error is harmful and requires remand" because "the ALJ's determination is not based on substantial evidence." *McCool v. Saul*, No. 3:19-CV-00393, 2020 WL 4905501, at *4 (S.D. Tex. Aug. 20, 2020).

The Commissioner argues extensively that the ALJ performed an adequate persuasiveness analysis when rejecting each of the medical opinions. The Commissioner

provides little guidance as to how the remainder of the record substantially supports the ALJ's finding that Williams can perform a full range of light work. In his decision, the ALJ did provide a lengthy analysis explaining why he found each of the medical opinions unpersuasive. Doc. [6] at 25-27. What is lacking in the ALJ's decision, is a sufficient explanation of how he arrived at the RFC he ultimately assigned.

In his sparse analysis, the ALJ pointed to a single examination record from Dr. Alan Cole dated March 18, 2019, indicating that Williams had a normal gait and could stand without difficulty. *Id.* at 27, 1150. In fact, the record cited by the ALJ is not from March 18, 2019, but rather from May 25, 2021; the ALJ mistakenly attributed the date of Williams' liver function test (3/18/2019) as the date of the exam. *Id.* at 149-50. Dr. Cole's records from August 2019 to June 2020 generally are silent as to Williams' gait and ability to stand. *See id*. at 880-903. Later records from June 2020 through July 2021 do report a normal gait and no difficulty standing. *See id.* at 1126-54. However, in some instances, the examination records give inconsistent findings. For example, on October 19, 2020, when reporting on Williams' gait, she was using crutches for assistance, but then later in the same record her gait is reported as "normal". *Id.* at 1130-31. Then on November 17, 2020, the record reported her having a limp on the right side, but later the same report indicated her gait was "normal". *Id.* at 1132-33. On March 30, 2021, the record indicated she had a limp, but then later said her gait was "normal". *Id.* at 1143-44. For additional context, examination records from Williams' treating physician, Dr. Lee, indicated she had a less than normal gait in the 2017 to 2018 time frame. *See* Doc. [6] at 975, 1008, 1033.

In constructing the RFC, the ALJ also relied on isolated examination records from August 10 and December 3, 2020, and noted that there is no mention of back pain in those

records. Doc. [6] at 27, 1063, 1082-83. While it is true there is no mention of back pain in these two records, there also is no mention of an absence of back pain. In other words, the August 10 and December 3, 2020, examination notes are simply silent as to whether Williams was experiencing back pain. It is not surprising that the December 3rd medical record did not discuss back pain, because Williams was receiving a follow-up examination for a fractured foot rather than treatment for back pain. As noted above, the ALJ relied on Dr. Cole's records reported that Williams' gait was normal and that she could stand without difficulty. Yet the ALJ apparently ignored portions of those same records that consistently reported Williams experiencing back pain.

Additionally, the ALJ relied on an x-ray of the thoracolumbar spine, dated November 6, 2018, that showed no acute findings. *Id.* at 27, 1038. The medical record contains other x-ray and MRI reports revealing that Williams suffered a traumatic injury to her spine in January 2015; as well as later x-rays indicating a foot fracture. *Id.* at 957-58, 1024. It is undisputed that Williams' spine injury required three surgeries and that she has continued to receive treatment and pain medication for the effects of that injury. In fact, as reported by the ALJ, she takes morphine three to four times a day for pain, as well as Neurontin, Baclofen, and Zoloft. *Id.* at 21.

An ALJ is not permitted to "draw his own medical conclusions from some of the data, without relying on a medical expert's help." *Frank v. Barnhart*, 326 F.3d 618, 621-22 (5th Cir. 2003). In the instant case, the ALJ selectively cited from the medical record and relied on his own interpretations of physical exams and x-ray reports. In sum, having rejected every medical opinion, the ALJ then cherry-picked examination findings and interpreted raw medical data to arrive at Williams' RFC. *See Frank*, 326 F.3d 618, 622 (warning an ALJ "must be careful not to

succumb to the temptation to play doctor," as "lay intuitions about medical phenomena are often wrong"); *see also Cooper v. Kijakazi*, 2023 WL 2298742, at *4 (S.D. Miss. Jan. 6, 2023) (The ALJ may not "cherry-pick evidence to support a preferred conclusion") (citing *Williams*, 355 F. App'x at 832, n.6). The ALJ failed to build an "accurate and logical bridge" between the evidence and his findings. *Price v.* Astrue, 401 F.App'x 985, 986 (5th Cir. 2010). Accordingly, the ALJ's RFC is not supported by substantial evidence.

The Court must consider whether the error was harmless. An error is harmless if it does not "affect the substantial rights of a party," *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012), or when it "is inconceivable that the ALJ would have reached a different conclusion" absent the error. *Frank*, 326 F.3d at 622. The ALJ found that Williams could perform past relevant work as a teacher's assistant. Doc. [6] at 28. The vocational expert testified that a teacher's assistant position qualifies as light work. *Id.* at 90. The ALJ did not inquire whether Williams would be able to perform the job of teacher's assistant if she is limited to less than a full range of light work. As explained above, the ALJ's RFC finding is not supported by substantial evidence. Accordingly, the ALJ's conclusion that Williams can perform her past work at the light exertional level is also called into question. The Court finds the ALJ's error was not harmless.

IT IS THEREFORE ORDERED AND ADJUDGED that this matter be REMANDED to the Commissioner for further proceedings.

SO ORDERED AND ADJUDGED, this the 6th day of September 2023.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE